**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GLAZERO INTERNATIONAL INC., <br><br> Plaintiff, <br><br> v. <br><br> SCHEDULE A DEFENDANTS, <br><br> Defendants. | Civil Case No.: 2:26-cv-01142 <br><br><br> **FILED UNDER SEAL** |

### <u>COMPLAINT</u>

Plaintiff Glazero International Inc. ("Plaintiff"), a Delaware corporation, hereby brings

the present action against the Partnerships and Unincorporated Associations identified on

Schedule A attached hereto (collectively, the "Defendants") and alleges as follows:

### I.    JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action

pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b),

and 28 U.S.C. § 1331.

2.    Personal jurisdiction over a non-resident of the state in which the Court sits is

proper to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes

personal jurisdiction over each Defendant pursuant to § 5322 of the Pennsylvania Consolidated

Statutes, Title 42, (the "Pennsylvania Long Arm Statute") which provides in pertinent part:

    a.    **General Rule**. A tribunal of this Commonwealth may exercise personal
        jurisdiction over a person … who acts directly or by an agent, as to a cause of

1

action or other matter arising from such person:

(1) Transacting any business in this Commonwealth [including, but not limited to:]…

(i)     The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii)    The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(iii)   The shipping of merchandise directly or indirectly into or through this Commonwealth.

(iv)    The engaging in any business or profession within this Commonwealth.
* * *
(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.
* * *
(10) Committing any violation within the jurisdiction of this Commonwealth of any statute … or rule or regulation promulgated thereunder by any government unit.

b. **Exercise of full constitutional power over nonresidents**. In addition to the provisions of subsection (a) the jurisdiction of the tribunals of this Commonwealth shall extend to all persons who are not within the scope of section 5301 (relating to persons) to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States.

42 Pa. Cons. Stat. § 5322.

3.      The Pennsylvania Long Arm Statute confers personal jurisdiction over the Defendants because Defendants regularly conduct, transact, and/or solicit business in Pennsylvania and in this Judicial District and, upon information and belief, derive substantial revenue from their business transactions in Pennsylvania and in this Judicial District. Defendants' activities have had a substantial, direct, and reasonably foreseeable effect on business and commerce in this district,

2

in Pennsylvania, and on interstate commerce. Defendants have availed themselves of the privileges and protections of the laws of Pennsylvania, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice. Defendants should reasonably expect that their actions in and outside of Pennsylvania would subject them to legal action in Pennsylvania and this Judicial District. For example:

a. Defendants have directed their business activities at consumers in Pennsylvania via temu.com online marketplaces, through which consumers in Pennsylvania can view Defendants' online storefronts, communicate with Defendants regarding Defendants' Counterfeit Products, and place orders for, purchase, and receive delivery of Defendants' Counterfeit Products in Pennsylvania. *See* **Exhibit B**.

b. Defendants are sophisticated sellers on temu.com, each operating one or more commercial businesses through which Defendants operate online storefronts to promote, advertise, distribute, offer for sale, and sell the Counterfeit Products imported into the United States.

c. Defendants (although foreign entities) accept payment in U.S. Dollars and offer shipping to Pennsylvania and this Judicial District (and calculate, charge, and remit tax based on sales into Pennsylvania and this Judicial District).

d. Upon information and belief, Defendants have cooperated, communicated, shared information, and coordinated their efforts in order to create an infringing marketplace operating in parallel to the legitimate marketplace of Plaintiff and third parties authorized to sell products embodying Plaintiff's trademark, including: employing and benefitting from substantially similar paid advertising, marketing, and advertising strategies (e.g., search engine

3

optimization or "SEO"), in order to make their online storefronts appear more relevant and target a consumer searching for products embodying Plaintiff's trademark. By their actions, in addition to the damages associated with unauthorized use of Plaintiff's trademark, Defendants are causing concurrent and irreparable harm to Plaintiff and the consuming public by: (1) reducing the online visibility of Plaintiff's trademark; (2) diluting and eroding the retail market price for Plaintiff's trademark; (3) causing overall degradation of the value of goodwill associated with Plaintiff's trademark; (4) devaluing the exclusivity that enhances the worth of Plaintiff's brand and reputation; and (5) increasing Plaintiff's overall cost to market its goods and educate consumers about Plaintiff's trademark.

e.    Defendants are concurrently targeting their infringement activities toward consumers in, and causing harm in, Pennsylvania.

f.    Defendants reside and/or operate in foreign jurisdictions with intellectual property enforcement systems and are cooperating by creating an illegal stream of counterfeit goods. (See, e.g., https://sellerdefense.cn/). Defendants regularly remove and add products from their online storefronts, making it extremely difficult to enforce Plaintiff's intellectual property under the laws of the United States.

g.    Upon information and belief, Defendants are aware of Plaintiff and Plaintiff's trademark and are aware that their infringement is likely to cause harm to Plaintiff in the United States, Pennsylvania, and this Judicial District.

h.    Plaintiff is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendants' unauthorized sale of the

4

Counterfeit Products in direct competition with Plaintiff.

4.      Alternatively, if Defendants contend that their use of temu.com should not be construed as contacts with the individual states and the Court accepts that contention, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over Defendants because (1) the claims asserted herein arise under federal trademark law; (2) Defendants would not be subject to jurisdiction in any state's courts of general jurisdiction; and (3) exercising jurisdiction is consistent with the United States Constitution and laws. For example, exercising jurisdiction is constitutionally permissible because:

a.      Defendants have purposefully directed their activities at the United States. The Defendants have voluntarily chosen to open accounts on temu.com to access the United States' market. Upon information and belief, temu.com target the entire United States, and do not provide sellers like Defendants with the ability to opt into or out of any particular jurisdiction (e.g., state) within the United States. Temu.com, the online marketplaces chosen by Defendants: (1) provide prices in U.S. dollars; (2) advertise free shipping to U.S. buyers, including buyers in Pennsylvania, and (3) provide testimonials of and reviews by U.S. buyers.

b.      Upon information and belief, Defendants have each had sales of the Counterfeit Products in the United States.

c.      Plaintiff's injuries arise from Defendants' forum-related activities. Defendants' offer to sell, sale, and distribution of the Counterfeit Products to U.S. residents is a but for cause of all of the infringement alleged in this action. Defendants know or should know that infringement of trademarks by U.S. entities or persons is likely to injure U.S. residents.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391: Defendants do not reside in the United States and are subject to venue in any district. Further, Defendants solicit business from this Judicial District and, upon information and belief, conduct and transact significant business in this Judicial District.

## II.    INTRODUCTION

6.     This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, namely ███████████████████████, using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

7.     Plaintiff is a ███████ corporation headquartered in ███████.

6

8.    Plaintiff is the owner of United States Trademark Registration No. ███████ ("Trademark-in-Suit").

| Registration Number | Trademark |
|---|---|
| ██████ | ████████ |

9.    The above U.S. registration for the Trademark-in-Suit is valid, subsisting, in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065. The registration for the Trademark-in-Suit constitutes ***prima facie*** evidence of its validity and of Plaintiff's exclusive right to use the Trademark-in-Suit pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed Trademark are attached hereto as **Exhibit A**.

10.    The Trademark-in-Suit is distinctive when applied to the Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards.

11.    The Trademark-in-Suit is a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1), and has been used by Plaintiff for many years. The innovative marketing and product designs have enabled the brand to achieve widespread recognition and fame and have made the Trademark-in-Suit one of the most well-known marks in the ████████████.

12.    Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the Trademark-in-Suit. As a result, products bearing the

Trademark-in-Suit are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiff. The goodwill associated with the Trademark-in-Suit is of incalculable and inestimable value to Plaintiff.

13.     Plaintiff's primary source of sales of products protected by the Trademark-in-Suit to consumer, including consumers in the United States, is Amazon. True and correct copies of Plaintiff's Amazon Store is attached hereto as **Exhibit C**.

**The Defendants**

14.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operations make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16.     The success of Plaintiff's brand has resulted in significant counterfeiting of the Trademark-in-Suit. Consequently, Plaintiff regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has

identified numerous fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, Temu, and Walmart, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[1] The primary source of all those counterfeits, the OECD and others say, is China.[2]

17.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[3] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[4] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[5] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of

---

[1] See Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[2] *Id*.; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

[3] *See* Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICE OF STRATEGY, POLICY, AND PLANS, COMBATING TRAFFICKING IN COUNTERFEIT AND PIRATED GOODS at 22 (2020 ), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.

[4] COMBATING TRAFFICKING IN COUNTERFEIT AND PIRATED GOOD, supra note 4, at 22.

[5] *Id*. at 39.

counterfeits and counterfeiters."[6]

18.    Defendants have targeted sales to Pennsylvania residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Pennsylvania, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Pennsylvania.

19.    Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of Counterfeit Products by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. On information and belief, Plaintiff has not licensed or authorized Defendants to use any of the Trademark-in-Suit in the United States, and none of the Defendants are authorized retailers of Plaintiff's products.

20.    Many Defendants also deceive unknowing consumers by using the Trademark-in-Suit without authorization within the content, text, and/or meta-tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiff's products. Other e-commerce stores operating under Seller Aliases omit using the Trademark-in-Suit in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's products.

---

[6] Chow, *supra* note 4, at 186-87.

21.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23.     Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to Plaintiff in a way that individual actions, occurring alone, might not.

24.     E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25.     Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

26.     Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the Trademark-in-Suit in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Pennsylvania over the Internet.

27.     Defendants' unauthorized use of the Trademark-in-Suit in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Trademark-in-Suit in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods. The Trademark-in-Suit is a highly distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products sold or marketed under the Trademark-in-Suit.

30.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Trademark-in-Suit without Plaintiff's permission.

31.     Plaintiff is the exclusive owner of the Trademark-in-Suit. Plaintiff's United States

Registration for the Trademark-in-Suit (**Exhibit A**) is in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the Trademark-in-Suit and are willfully and intentionally using counterfeits of the Trademark-in-Suit. Defendants' willful, intentional, and unauthorized use of the Trademark-in-Suit is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

32.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Trademark-in-Suit.

34.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

**COUNT II**

**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

35.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

37.     By using the Trademark-in-Suit in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

38.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39.    There is no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of Plaintiff's brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1). That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

    a.  using the  Trademark-in-Suit or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not a genuine product manufactured by Plaintiff or is not authorized by Plaintiff to be sold in connection with the Trademark-in-Suit;

    b.  passing off, inducing, or enabling others to sell or pass off any products as Plaintiff's products or any other products produced by Plaintiff that are not Plaintiff's, or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Trademark-in-Suit;

    c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise

connected with Plaintiff;

    d.  further infringing the Trademark-in-Suit and damaging Plaintiff's goodwill; and

    e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademark, including the Trademark-in-Suit, or any reproductions, counterfeit copies, or colorable imitations thereof;

2). Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as Amazon, eBay, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing and counterfeit goods using the Trademark-in-Suit;

3). That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Trademark-in-Suit be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4). In the alternative, that Plaintiff be awarded statutory damages for willful trademark infringement pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Trademark-in-Suit;

5). That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6). Award any and all other relief that this Court deems just and proper.

15

Dated: June 1, 2026                              Respectfully submitted,


                                           /s/ Zhan Jin
                                           Zhan Jin (CA-355793)
                                           **Law Office of Tina Z. Jin**
                                           1769 Hillsdale Ave., Ste. 24483
                                           San Jose, CA 95154-9998
                                           Email: tinajin@zjinlaw.com
                                           Phone: (408) 338-8500

                                           *ATTORNEY FOR PLAINTIFF*

16